IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHERRY K. MILHOLLAND, M.Ed., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:07-cv-0216 |
| ) | Judge Trauger |
| SUMNER COUNTY BOARD OF EDUCATION ) | |
| and BENNY C. BILLS, individually, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by the defendants (Docket No. 35), to which the plaintiff has responded (Docket No. 41), and the defendants have replied (Docket No. 48). For the reasons discussed herein, the defendants' motion will be granted.

## BACKGROUND

Beginning in August 1995, the plaintiff, Sherry Milholland, was employed by the defendant Sumner County Board of Education ("Board of Education") in a variety of teaching and administrative positions.[1] At all relevant times, the defendant Benny Bills also was employed by the Board of Education.

---

[1] Unless otherwise noted, the facts are drawn from Plaintiff's Response to Defendants' Concise Statement of Material Facts for Which Defendants Contend There Is No Genuine Issue for Trial (Docket No. 43), Defendants' Response to Plaintiff's Statement of Material Facts (Docket No. 50), and Plaintiff's Response to the Concise Statement of Additional Material Facts for Which Defendants Contend There Is No Genuine Issue for Trial (Docket No. 54).

1

In 2001, Milholland was diagnosed with inflammatory arthritis. Despite her condition, Milholland has never been given any work restrictions by a doctor. Her condition does not limit her ability to work as a teacher or as a school administrator without any accommodation, and she has never informed anyone employed by the Board of Education that she could not do her job because of her health or her condition. At the time of Milholland's diagnosis, Bills was the Principal of Gallatin High School and Milholland's husband was a teacher at that school. Milholland's husband and Bills maintained a friendly relationship. At some point after Milholland's diagnosis, her husband discussed Milholland's health problems generally with Bills, although Bills was not aware of the particular diagnosis that Milholland had received. After learning of Milholland's health problems, Bills inquired after her health at social occasions. (Milholland Dep. at 30-31.)

In May 2004, Milholland became an Assistant Principal of Knox Doss Middle School ("KDMS"). Her supervisor at KDMS was the Principal, Mike Brown, who was aware of her medical condition and with whom she maintained a good working relationship. At some point after Milholland began working as the Assistant Principal of Knox Doss Middle School, Bills became the Director of Schools for Sumner County.

Milholland served as one of two Assistant Principals at KDMS; Rufus Lowe served as the other Assistant Principal. Milholland had a number of concerns about Lowe's performance, which she voiced to Brown, including concerns that Lowe had sexually harassed students and that he was not carrying his share of the workload, leaving her to bear both her own responsibilities and his. Indeed, Bills testified that Lowe was "not an effective administrator" and that he had trouble meeting deadlines and carrying out his responsibilities. (Bills Dep. at 32,

2

36; *see also* Brown Dep. at 11.) Bills also testified that, while Brown complained about Lowe's "timeliness, responsiveness, [and] completion of tasks," Brown made no such complaints about Milholland's performance. (Bills Dep. at 36, 47-48; *see also* Brown Dep. at 20-21.)

At some point in early 2006, Brown and Bills discussed problems with the working relationship among the "administrative team" at KDMS—that is, the working relationship between Milholland and Lowe, who were "not working cohesively together" (Bills Dep. at 29)—and ultimately decided to transfer both Milholland and Lowe from KDMS.[2] Brown testified that "something needed to be done" and that he and Bills "agreed that starting over with a new administrative team would be the best for the school."[3] (Brown Dep. at 20-21.) Likewise, Bills testified that Brown informed him that "things [were] not working out" at KDMS because of "internal discord" between Milholland and Lowe (Bills Dep. at 33-34) and recommended that both Milholland and Lowe be transferred "for that school to be an efficient organization" (Bills Dep. at 42-44). Although both Bills and Brown admitted to having greater issues with Lowe's individual performance than with Milholland's, Bills testified that they decided to transfer both

---

[2]The record is unclear as to when precisely these events took place. Bills testified that the discussions took place in early 2006, prior to his March 13, 2006 meeting with Milholland (Bills Dep. at 41-42, 78-79), and that the decision to transfer Milholland was made sometime in March (Bills Dep. at 48-49), although Milholland was not notified of the transfer until June.

[3]Milholland claims that "it was not Mr. Brown's intention to have both assistant principals removed," intimating that Bills motivated the ultimate decision to transfer both Milholland and Lowe from KDMS. (Docket No. 50 ¶ 39; Docket No. 43 ¶ 12.) The evidence does not, however, support this characterization. While Brown did testify that he "really didn't know" what his intentions were when he first met with Bills (Brown Dep. at 21), his testimony also makes clear that he and Bills jointly reached the conclusion that both Milholland and Lowe should be transferred, and does not suggest that Bills manipulated or somehow pushed Brown into agreeing to the transfer. (Brown Dep. at 20 ("As our discussion went on, it became apparent that we agreed that starting over with a new administrative team would be the best for the school.").)

3

Milholland and Lowe so there would be a "clean slate with faculty, with parents, and with students" and added that "teachers did not have that working relationship of respect with Ms. Milholland because there was always fraction [*sic*], discord" between her and Lowe. (Bills Dep. at 44-45.) As per the procedure for such transfers, Brown filled out a request to have Milholland transferred once the decision had been made. (Brown Dep. at 19, 22-23.)

On March 13, 2006, Milholland had a meeting with Bills to discuss her concerns about Lowe. Milholland complained that Lowe was not "carrying his load" and that she was required to do much of Lowe's work in addition to her own. The conversation eventually turned toward Milholland herself, and Milholland claims that Bills asked about her classroom certifications and said "Don't you think it would be easier on your health if you would just go back to the classroom?" or words to that effect. (Milholland Dep. at 92.) Bills acknowledged that he raised the possibility of Milholland's moving back to a teaching position, but described his comments as focusing not on Milholland's health but rather on the increased workload and stress level involved with an administrative position in comparison to that involved with a teaching position. (Bills Dep. at 72, 76-77, 81-82.) According to Milholland, the two did not discuss her transferring from KDMS in any more detail at the meeting. (Milholland Dep. at 92.)

On March 22, 2006, shortly after the meeting, Milholland sent Bills a follow-up letter in which she stated that she "simply wanted [Bills] to be aware that [she] strongly felt that [she] was plenty healthy enough to continue as an administrator, because he had brought up that question about going back to the classroom." The letter also noted that her "illness, thanks to a tremendous rheumatologist and new medications, is well under control." Finally, Milholland

4

requested to continue working in an administrative position and to be "considered for any available openings at the central office level." (Docket No. 50 ¶¶ 33-35.)

In April 2006, Milholland requested a transfer to either the position of Principal at Wessington Place Elementary School or the position of Materials Center Supervisor at the Board of Education's Central Office. Brown approved the transfer request and indicated that he believed Milholland would be a good fit for the position at Wessington Place Elementary School. (Brown Dep. at 45-46; *see also* Bills Dep. at 65, 67.) Although Bills had the authority to approve the transfer without opening the positions to other candidates and without requiring Milholland to interview for the position, he did not do so. (Bills Dep. at 68-69.) Instead, Milholland interviewed with a panel that was to make a recommendation to Bills. The panel did not recommend Milholland for either position, and she was not offered either position.

Instead, in June 2006, Bills informed Milholland that she would be transferred[4] to Station Camp High School ("SCHS"), where she was assigned to a teaching position rather than an administrative position.[5] According to Milholland, Bills informed her that she was being transferred to a teaching position because she was not "getting the job done" in her administrative position at KDMS.[6] (Milholland Dep. at 99.)

---

[4]Milholland disputes the neutral characterization of this move as a "transfer," arguing that it constituted a demotion. It is referred to as a "transfer" here without judgment as to the nature of the move, whether the move was a demotion or a lateral move, or whether the move constituted an adverse employment action under the Americans with Disabilities Act.

[5]As the subject that she was initially assigned to teach, Career Management Success, was in the process of being phased out of SCHS's curriculum, Milholland was subsequently transferred, with Bills' approval, to a position teaching Family and Consumer Sciences at SCHS.

[6]After learning of her transfer, Milholland and her husband had two meetings with Bills to discuss the transfer. First, Milholland's husband met with Bills alone. Milholland's husband testified that, during that meeting, Bills attributed the transfer to the fact that Milholland had

5

In August 2006, Milholland filed a charge of discrimination with the Equal Employment Opportunity Commission and, in January 2007, she was issued a right to sue letter. According to Milholland, after filing the charge, she was prevented from earning compensation in addition to her regular salary pursuant to the Board of Education's "Career Ladder" program.[7]

## ANALYSIS

Milholland alleges that, in transferring her to a teaching position, the Board of Education discriminated against her in violation of the Americans with Disabilities Act ("ADA") and the Tennessee Handicap Act. She further alleges that the Board of Education and Bills, individually, unlawfully retaliated against her in violation of the Tennessee Human Rights Act in that they did not provide her with sufficient opportunities to earn compensation under the Career Ladder

---

"missed too many days at work" and did not make any reference to her health. (Michael Milholland Dep. at 16-17.) At the second meeting, both Milholland's husband and Milholland herself were present. According to Milholland, her husband asked Bills whether he had referenced Milholland's health during the March 16, 2006 meeting, and Bills confirmed that he had done so. (Milholland Dep. at 98.) Bills did not recall being asked whether he had referenced Milholland's health but stated that, if so, he would have responded that the transfer "had nothing to do with anything other than we needed to make a change at that school." (Bills Dep. at 93-95.) Milholland's husband testified that, at that second meeting, Bills attributed Milholland's transfer to the facts that the Milholland had missed a number of days of work and that "he thought she should go back to the classroom." (Michael Milholland Dep. at 17-18.) The record further indicates that the second meeting took place after Milholland had secured counsel. (Milholland Dep. at 98.) Additionally, Milholland and her husband both acknowledged that they attempted surreptitiously to tape record the second meeting, although the recording apparently was very muffled and has not been introduced as evidence here. (Milholland Dep. at 99-101; Michael Milholland Dep. at 17-19.)

[7]Milholland claims that, as an administrator, she was entitled to additional compensation under the Career Ladder but that, as a teacher, she had to earn Career Ladder compensation by taking on additional responsibilities. She claims that she applied for additional responsibilities in August 2006, shortly after filing her charge of discrimination, and that she was not permitted to engage in such work until January 2007. The defendants assert that Milholland did engage in such work in late 2006 (Docket No. 48 at 9) and that, regardless, she earned all the Career Ladder compensation to for which she was eligible during the 2006-2007 school year (Docket No. 36 at 6).

6

program in retaliation for her filing a charge of discrimination. The defendants have moved for summary judgment with respect to each of these claims.

**I.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of

7

evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

## II.    ADA Disability Discrimination Claim

To establish a disability discrimination claim under the ADA, Milholland must demonstrate that she is an individual with a disability, that she is otherwise qualified to perform the job requirements at issue, that she was subject to an adverse employment action solely by reason of her disability, and that she was replaced by a nondisabled individual. *See Martin v. Barnesville Exempted Vill. Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934 (6th Cir. 2000) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996)). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of the individual," "a record of such impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2). It is the third definition that is at issue here, as Milholland does not claim that her arthritis constitutes an impairment that substantially limits a major life activity. (*See* Docket No. 41 at 8; Docket No. 43 ¶ 16.) Instead, she alleges that she was discriminated against because the defendants regarded her as having a substantially limiting impairment. (Docket No. 41 at 8-11; Docket No. 43 ¶ 15.) According to the defendants,

8

Milholland has not demonstrated that she was regarded as having a substantially limiting impairment. (Docket No. 36 at 3-5.)

To establish a "regarded as" claim of disability discrimination, a plaintiff may demonstrate either that an employer "mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities" or that an employer "mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines*, 527 U.S. 471, 489 (1999). In either case, a plaintiff must demonstrate that the employer "entertain[ed] misperceptions" about her. *Id.* This requires the court to "look to the state of mind of the employer against whom [the plaintiff] makes a claim," and the plaintiff's ability to establish a claim "becomes a question of [the employer's] intent." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001). In addition, a "regarded as" plaintiff must demonstrate not just that the employer believed that the plaintiff is "somehow disabled," but that the employer believed that the plaintiff is "disabled within the meaning of the ADA" in that her impairment substantially limits her in a major life activity. *Id.* at 709. To establish that the defendants perceived her to be limited in the major life activity of working,[8] Milholland must show that the defendants believed she was significantly limited in her ability to perform "a broad class of jobs." *Id.* Proving such a case is "extraordinarily difficult" and "takes a plaintiff to the farthest reaches of the ADA." *Id.*

---

[8]Although Milholland is not especially clear as to which major life activity she claims the defendants believed her to be limited in, she asserts that Bills believed her to be unable to perform the "broad class of jobs" of school administration (Docket No. 41 at 11) and that the Sixth Circuit considers working to be a major life activity (Docket No. 41 at 9). Reading between the lines, then, the court understands Milholland's claim to be that the defendants perceived her to be substantially limited in the major life activity of working.

While it is undisputed that Bills was aware of the fact that Milholland suffered from health problems—regardless of whether he knew of her particular diagnosis—such knowledge alone does not establish that the defendants perceived Milholland's condition to substantially limit her ability to work. *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (fact that employer knew plaintiff was having health problems and had suspicions as to her diagnosis is insufficient to demonstrate that employer viewed plaintiff as having a substantially limiting impairment). Rather, Bills must have not only known about Milholland's condition but also believed that it limited her ability to work in a broad class of jobs.

The only evidence that Milholland points to in support of her claim is Bills' question during the March 13, 2006 meeting, "Don't you think it would be easier on your health if you would just go back to the classroom?"[9] and the fact that Bills subsequently transferred Milholland to a teaching position. (Docket No. 43 ¶ 22; Milholland Dep. at 44.) Although Milholland acknowledges that Bills believed she could work, she asserts that these facts establish that Bills believed she could not work in administrative jobs in the Sumner County schools, which she characterizes as a broad class of jobs. (*See* Docket No. 43 ¶ 24; Milholland Dep. at 44-45.) Even drawing all inferences in the light most favorable to Milholland, this

---

[9]The parties dispute whether, during the March 13, 2006 meeting, Bills referenced Milholland's health specifically or rather just referred to the stress related to Milholland's job. On the one hand, the follow-up letter from Milholland, which addressed the possibility that Bills might regard her health as an issue and which was sent shortly after the meeting, suggests that her health had indeed been a topic of conversation during the meeting. By contrast, Milholland's husband testified that Bills attributed Milholland's transfer solely to the fact that she had missed work without referencing her health, suggesting that health may not have been a topic. Regardless, as the defendants have moved for summary judgment, all inferences must be drawn in favor of the plaintiff, and this court will assume that Bills did reference Milholland's health during their meeting, as Milholland testified.

10

simply is not enough for a reasonable fact-finder to infer that the defendants believed Milholland was substantially limited in her ability to perform a broad class of jobs.

First, Bills' question does not suggest that he believed Milholland to be unable to perform any administrative jobs, but merely that a classroom job might be easier than an administrative job. He was simply stating what is obvious—and what is probably true for many people, regardless of whether they suffer from arthritis or any another health condition—that the stresses to one's health that are associated with administrating an entire school are greater than those associated with teaching. Additionally, the fact that Milholland was turned down from two administrative positions for which she applied does not suggest that she was viewed as incapable of performing any administrative jobs. *See Moorer v. Baptist Mem. Health Care Assoc.*, 398 F.3d 469, 479 (6th Cir. 2005) ("The inability to perform a single, particular job does not constitute a substantial limitation in a the major life activity of working.") (quotation and citation omitted).

Even if Bills' comments could be interpreted to mean that he believed Milholland unable to perform certain jobs, the jobs that Milholland claims Bills perceived her as unable to perform—"administrative positions within the Sumner County school system" (Docket No. 43 ¶ 24)—do not constitute a "broad class of jobs." Milholland does not point to (nor did the court uncover) any cases to support the argument that administrative jobs in the education field are a class of jobs distinct from teaching jobs in the education field.[10] The fact is that Milholland was

---

[10]At least one district court has indicated that employment as a teacher and as a school administrator fall within the same broad class of jobs. *See Temple v. Bd. of Educ. of City of N.Y.*, 322 F. Supp. 2d 277, 281 (E.D.N.Y. 2004). In *Temple*, the plaintiff was, like Milholland, a school administrator who was transferred to a teaching position and brought a "regarded as" claim under the ADA. The court granted summary judgment for the employer, finding that the plaintiff continued to be employed as a teacher and thus "failed to show that the [employer]

11

trained in and, in fact, worked in both teaching and administrative positions in Sumner County. Although it may have been her preference to work in an administrative position rather than in a teaching position, that preference alone does not render that particular set of jobs a "broad class." Thus the fact that Milholland was transferred to a teaching position and continued to be employed by the Board of Education lends further support for the conclusion that the defendants viewed her as capable of working, and indicates she was not perceived as substantially limited in her ability to perform a broad class of jobs.

Finally, Milholland asserts that "regarded as" claims involve fundamentally factual questions that are inappropriate for resolution on summary judgment. (Docket No. 41 at 9.) In *Ross*, the Sixth Circuit first noted that determining an employer's state of mind in a "regarded as" case is "rarely susceptible to resolution at the summary judgment stage." *Ross*, 237 F.3d at 709. However, there were a number of factors at play in *Ross* that are conspicuously absent here. Specifically, the *Ross* court focused on the fact that there was "substantial evidence" that the plaintiff's condition played "a significant role in the employer's decision" as well as "evidence that the employer concocted a pretextual justification" for its employment decision. *Id.* ("[W]here there is substantial evidence that an individual's medical status played a significant role in an employer's decision to fire that individual, combined with evidence that the employer concocted a pretextual justification for that firing, the need for more extensive factual inquiry into whether the employer engaged in unlawful discrimination is especially acute."); *see also Moorer*, 398 F.3d at 481-83 (applying *Ross*, 237 F.3d at 709). The Court concluded that the existence of such evidence counseled against summary judgment. *Ross*, 237 F.3d at 709.

---

perceived her as being substantially limited in performing a broad range of jobs in various classes." *Id.*

12

Since deciding *Ross*, the Sixth Circuit has affirmed a number of district court rulings granting summary judgment in "regarded as" cases where there was no evidence that a plaintiff's medical condition played a role in an employment decision or that the employer had concocted a pretextual justification for its decision. *See Dunaway v. Ford Motor Co.*, 134 Fed. Appx. 872, 878 n.5 (6th Cir. 2005) (distinguishing *Ross* and affirming summary judgment for the employer where the plaintiff "has not even presented a modicum of evidence the employer perceived him as disabled under the ADA or had a discriminatory motive in its decision not to hire him"); *McElroy v. Philips Med. Sys. N. Am., Inc.*, 127 Fed. Appx. 161, 169 (6th Cir. 2005) (distinguishing *Ross* and affirming summary judgment for the employer where "there is, at best, a weak inference that [the employer] may have believed [the plaintiff's] past health problems had affected his performance"); *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 600 (6th Cir. 2002) (distinguishing *Ross* and affirming summary judgment for the employer where the plaintiff did not provide "sufficient evidence to support a conclusion by a rational trier of fact that he was disabled or regarded as disabled"); *see also Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 311 (6th Cir. 2000) (preceding *Ross*, but affirming summary judgment for the employer where the plaintiff "failed to produce any evidence that [the employer believed that] one or more of his major life activities was substantially limited" beyond "the mere conjecture that he was fired because [the employer] perceived him as having a [limiting impairment]").

This case is much more comparable to these cases than to *Ross*. Indeed, the evidence that Milholland relies on here is quite similar to that proffered by the plaintiff in *McElroy*, which the Court found insufficient to survive summary judgment. In *McElroy*, the plaintiff argued that the employer "was aware of" and "made reference to" his health problems, mentioned the need to "rekindle his skills" during a performance review, and "urged him to retire." *Id.* at 169. Like the

13

*McElroy* plaintiff, Milholland points to the facts that Bills knew of her health problems, made reference to them, and encouraged her toward a less stressful position. Also similar is the fact that Milholland's superiors expressed concerns about her performance—specifically, her working relationship with Lowe—that was "unrelated to any physical impairment." *Id.*

There is little evidence, let alone "substantial evidence" like that present in *Ross*, to suggest that Milholland's condition played a significant role in her transfer to a teaching position. It is only Milholland's apparently baseless speculation that Bills' inquiry regarding her health had anything to do with the subsequent decision to transfer her from KDMS. Rather, the evidence overwhelmingly indicates that her transfer was predicated not by her health but by personnel problems at KDMS stemming from Milholland's relationship with Lowe. Moreover, there is nothing in the record to suggest that these facts were concocted by the defendants as a pretext for their decision.

As Milholland has not established that there is a genuine issue of material fact as to whether the defendants believed that she was substantially limited in a major life activity, the defendants are entitled to summary judgment with respect to her disability discrimination claim under the ADA.

## III. State Law Claims

In addition to her ADA claim, Milholland asserts a disability discrimination claim against the Board of Education under the Tennessee Handicap Act and retaliation claims against the Board of Education and Bills under the Tennessee Human Rights Act.[11]

---

[11] Milholland did not assert a retaliation claim under the ADA.

Jurisdiction over these state law claims is supplemental, and is based on the existence of a viable federal claim. *See* 28 U.S.C. § 1367. As summary judgment will be granted for the defendants on Milholland's federal claim, this court will decline to exercise jurisdiction over her state law claims. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under [this] section if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations will usually point to dismissing the state law claims . . . .").

## CONCLUSION

For the reasons discussed herein, the Motion for Summary Judgment filed by the defendants will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

15